Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons having in mind a form of business for the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States and its Honorable Court. Good morning everyone. Pleased to have you here and Mr. Hazelwood, when you're ready, we'll begin with our first case, United States v. Slate. Please, please proceed. Thank you, Your Honor. Good morning and may it please the Court. Benjamin Hazelwood for William Slate. This court should reverse the district court's sentence for two reasons. First, the district court imposed a 40-year sentence on Mr. Slate in violation of his Sixth Amendment rights under Apprendi v. New Jersey. This court's decisions in Chambers, Collington, and Lancaster dictate that the district court should apply intervening law in conducting a First Step Act resentencing. Had the district court done so, it could not have sentenced Mr. Slate to a term of more than 20 years because the jury in his case did not make any drug quantity finding whatsoever. Second, the district regarding his rehabilitation in prison, his health conditions, and his support network outside of prison were irreleased. The district court conducted this sentencing prior to this court's decision in Chambers and so, therefore, did not have the benefit of the decisions on that topic that have come down. Did Chambers and Collington and Lancaster mention Apprendi? No, Your Honor. Chambers and Lancaster dealt with intervening legal developments related to the sentencing guidelines. I understand that, but there's no specific discussion of Apprendi in those cases. That's correct, Your Honor. We would submit that application of Apprendi flows from the court's holdings in those cases. If anything, Your Honor, application of Apprendi is more straightforward and, I think, an easier case than application of the intervening sentencing guidelines issues that were raised there. As Your Honor said in Your Honor's dissent in the Lancaster case, there's a disagreement as to the scope of legal issues that may be considered in a First Step Act resentencing. I think everyone agrees, however, that if a district court like this one exercises its discretion to impose a reduced sentence, it applies the new statutory sentencing ranges from the Fair Sentencing Act. Apprendi, unlike the career offender guidelines, tells the district court precisely how to do that in 2019. Mr. Hazelwood, can I, sorry, I'm sorry, Judge Wilkinson. You just said something that I wanted to ask you about. You said if the district court exercises its discretion to apply the First Step Act and reduce a sentence, there are a couple of procedural requirements for First Step Act eligibility and once you get past that, those hurdles, it seems to me that if, under your position, as it appears to be the case here, if a particular guideline, changing guidelines range, or in this case, a change in the law, Apprendi, which is not retroactive, but apparently that doesn't seem to matter here, at least that's your position, that if a district court has no discretion, that it must, at a minimum, reduce the sentence to that sentence, the new statutory maximum. Is that your position? Your Honor, two responses there. One, I think, is specific to the fact of this case, and one more. This case is unique because, unlike in Covington, a district court that did exercise discretion, in this case, we have a district court that did exercise its discretion. A different case would come out differently in which a district court had refused entirely to impose a reduced sentence. This is a unique case because the district court has already done so, so the question is, can it impose that reduced sentence without . . . But, let me, I think, follow up on Judge Diaz's question. The hard thing, the difficult thing for me to get around is this very question, which is, nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section, and if we hold that Apprendi is mandatory, then aren't we essentially overriding what we're requiring the district court, essentially, to reduce the sentence, and wouldn't that fly in the face of Congress? No, Your Honor. I think this court addressed that issue in the Collington decision. That was a decision where the district court had exercised discretion not to resentence at all, and this court held that it was an abuse of that discretion in that case where the new application of the new Yes, but that wasn't an Apprendi case. I mean, this seems to me to fly, or the concern I have is that it seems to just fly in the teeth of that particular proviso, and I'm thinking that, I'm wondering, maybe Apprendi is something that the district court can, in its discretion, consider, but to go beyond that and say it's required seems to me to take on Congress. There's a difference, I mean, what's wrong with a situation where it's discretionary with the district court whether to consider Apprendi, but it's not absolutely mandated? Well, Your Honor, I would first note that even under that rule, Mr. Slate would win this appeal because the district court did not consider Apprendi in his particular case. Well, it could or it could not. It wouldn't be necessarily an error. It would not be an error not to consider Apprendi because that comes close to requiring it, but, you know, the district court's discretion, it seems to me, in this kind of proceeding is about as broad as it gets. Well, Your Honor, even under a may consider rule, I would point the court to the D.C. Circuit's decision in the United States versus White. We cited that one in our reply brief that had come down, I think while the case was being briefed. The D.C. Circuit applied a may consider Apprendi rule, but still remanded for the district court to have the benefit of ruling that it could. What you'd like is this thing to be remanded and have the district court take a full look at it again. Well, at minimum, if the court were to find that Apprendi may be considered, we would defend it. Well, but the district court hadn't ruled on Apprendi yet, has it? That's correct. Why wouldn't we let them take the first crack at it? That's correct, Your Honor. We would submit that. Now, on last Friday, I think it was, or Thursday, we issued an unpublished opinion, similar to Donaldson or Nicholson or something like that. Have you seen that one? I believe so, Your Honor, that the last name of the defendant is escaping, but I believe so. And we mentioned those three cases that you talked about, Chambers and Collington and whatever the other one is. Yes, Lancaster, Your Honor. And told the district court to take another look at it. Is there any material difference between this case and that unpublished case that came out last week? Well, yes, Your Honor, because we would argue that Chambers and Lancaster require the application of intervening law, and Apprendi is intervening law here. And so remanded the district court. Well, we told the court in that unpublished case to take a look at Chambers and Lancaster. We specifically named them. Yes, Your Honor, and we would... My apologies. Is there any material difference between this case and that one? Yes, because if the court rules in our favor as to the application of Apprendi, the district could not impose a sentence of more than two years, to the extent the district court disagreed with Mr. Clay's Apprendi argument, it would be back to the district court. Why wouldn't it be... This is a question, this is a pure question of the law. Why wouldn't it be advisable for this court to give a guidance, to give guidance on whether Apprendi is required to apply to these First Step Act proceedings, rather than have the case go back and forth? It might be better to decide it now. Another thing that concerns me is how this question comports with the United States v. Dillon, where the Supreme Court declined to hold Booker retroactive in a 3582 C-2 proceeding. And it seems to me the principles were pretty much the same. And the Supreme Court says in Dillon, 3582 C-2 represents a congressional act of lenity, intended to give prisoners the benefit of later enacted adjustment, which, quote, does not implicate the Sixth Amendment right to have a central fact found by a jury beyond a reasonable doubt. Now, I don't understand why, if we had some sort of ruling that Apprendi was required or mandatory, aren't we crowding Congress and what it said in 404C? And aren't we going to be putting gently in some tension with the Supreme Court's decision in Dillon? No, Your Honor. I think this Court has considered both the 3582 C question and the Dillon question. As far back as Worsing, the Court has made clear First Step Act proceedings are not simply a mechanical reduction as Dillon involved or as 3582 C-2 involved. They arise under 3582 C-1b. And as the Court put it in Collington, the District Court is not conducting a complete plenary re-sentencing, but is doing something more than a mechanical reduction. I mean, Dillon and this case have a good deal in common in this sense that they were both acts of Congress, which were directed at particular cohorts of offenses or particular offenses and particular class of offenders. And Apprendi is something that requires across the board in initial sentencing proceedings that everyone is entitled to at the end of a trial or guilty plea or whatever that first proceeding. But both the First Step Act and 3582 C indicated Congress's desire to correct a specific problem that pertained to certain covered offenses. And if we say that regardless of Congress's sort of limited focus, that every time Congress enacts a targeted sentence reform, no matter what Congress says, it's going to carry Apprendi and all of the sequence of the Sixth Amendment. It seems to me we are impairing Congress's ability, which we would all want, to enact limited sentencing reforms that don't bring about everything that is applied in a plenary initial sentencing. And Collinson and other cases indicate that even these First Step Acts, as Collinson said, they're not plenary proceedings. The defendant is not there. The defendant is not there in person. They're very different from the context in which Apprendi was applied, which was the plenary initial proceeding to which everyone is entitled. This is a different species, it seems to me, and I'm worried about going up against Section 404 and also against the Supreme Court's decision in Dillon, which seems to map on to this decision to a pretty significant extent. Your Honor, I think briefly the answer to the Court's concern is that we're not talking about two poles here. I think there are proceedings as in Dillon or as under 3532 that are limited in terms of sentence reduction proceedings, subject to the limitations, Your Honor. There are, of course, initial sentencings. I think as this Court has interpreted the First Step Act, what Congress meant for these particular proceedings was something in the middle, and that something in the middle entails the imposition of a new statute, I think, as what the Court said in the Chambers and subsequent decisions. Here, at minimum, when imposing that new sentence, the District Court has to look for rules for applying a new statute. Say that again. At minimum, when the District Court is imposing a new sentence under the First Step Act, it has to look at application of the new statutory sentencing ranges, and in doing that, very narrow... And the new sentence can't exceed the statutory maximum, correct? Cannot exceed the statutory maximum under Collington, correct. And Chambers and Collington stand for that proposition, right? Correct, Your Honor. That limited... The Court has to figure out what the statutory maximum is. Exactly. And you say here it's no more than... you say no more than 20 years. Correct. Apprendi tells the District Court in 2019 how to apply those statutory maximum sentences. How come you don't say that it's no more than five years? Because the statutory maximum applicable to Count 1 for Mr. Slate, with the jury's finding of no specific quantity, would be 20. Well, but under our old Quixie case, when you got these multiple objects of a conspiracy, and they get a general verdict, and you got marijuana mixed up with cocaine, and they don't say what was what, and what the quantities were, like you have here, the government's stuck with the least punishable. Correct, Your Honor. And that would be five years. Your Honor, I believe that under... But you don't argue that. I believe that under Quixie, the same 20-year statutory maximum would apply. The sentence... Well, there's no 20-year maximum for marijuana, is there? My understanding, Your Honor, would be that the conspiracy under 846 would still fall under the 20-year statutory maximum. Well, you'd have to say that it's cocaine rather than marijuana. Yes, Your Honor. They proved a lot of cocaine. Because they convicted him of some cocaine on some substantive counts. But on the conspiracy count, they didn't have anything found by the jury, except guilty or not guilty. And they left marijuana in it for purposes of the conspiracy count. We agree, Your Honor. But if you take that view, aren't you creating a pretty stark disparity because you're producing a windfall for a defendant sentenced before, and when prosecutors felt no need to have jury findings on drug quantities. And those where you're setting up a very different sentencing regime, for defendants sentenced before, and those sentenced afterwards. And that's part of the problem, is that your interpretation builds into the whole sentencing equation a significant inequity. Your Honor, I have two responses there. The first is that is what Congress did in the first step. It chose a somewhat extraordinary step to disturb the finality of crack cocaine sentences for defendants. Because the disparity under which they were sentenced was starkly different. And so, inevitably, Mr. Slate is getting a windfall as compared to a defendant not obtaining a first impact pre-sentence. Well, you're not getting a windfall if you're sentenced pursuant to the statute that applies. I mean, it might be a windfall compared to what, to a 40-year sentence or a life sentence. But if the statute puts a maximum on it of 20 years or five years, that's the law. And we have to apply the law. Precisely, Your Honor. We're not here to decide what the fair sentence is. Precisely, Your Honor. And Mr. Slate's Sixth Amendment rights under— It has a lid on it that Congress put on it. Correct. Congress dictated that defendants could obtain the imposition of a new sentence. Mr. Hazelwood, can I follow up? Because early on, you mentioned this Court's cases, Chambers and Collington, and in particular, Lancaster. And I want to make sure I understand what your position here is. Obviously, you'll take what you can get. But as I understand it, your position is that under our Court's cases, retroactivity really doesn't play a role in how a district court decides to fix what the maximum sentence should be. And in Lancaster, for example, there was the court, the panel majority, decided that a change in the law with respect to career offender status, with no hint as to retroactivity, was something that the district court had to consider. And it erred in considering it. And so we sent the case back. And so if that's the, you know, that's sort of our jurisprudence as it now stands, doesn't, or don't our cases essentially compel the application of apprendi under these circumstances? Yes, Your Honor. And I think as Judge Wilkinson pointed out in his dissent in Lancaster, the sentencing guideline change- Well, you actually concurred reluctantly. I apologize for mischaracter. Concurred. The sentencing guideline change, not a retroactive change there. And yet the application of it was compelled. So we would submit that the application of apprendi is required under that. I think the court can also look at apprendi as a more fundamental and more core issue. In 2019, the district court was, under this court's precedent, imposing a new sentence, and at minimum, if nothing else, buying the new statutory sentencing ring. Apprendi, and as Judge King has pointed out, Quixi, or this court's interpretation of Quixi, it tells district courts how to impose sentences in these particular cases. And so the court could narrowly require district courts, when they are imposing sentences in that way, to follow the existing law as a state of sentencing for that narrow application without necessarily requiring the application of all retroactive or non-retroactive legal change. All right. Are there any further questions? Judge King, Judge Diaz, do you have further questions? No, no, Judge Wilkinson. Thank you. Thank you very much. Mr. Cook, are you ready? Yes, Your Honor. May it please the court. Collington did not specify, in any respect, how a court would go about determining what the applicable statutory maximum is in a section 404 case. And in this case, even if the court were to, under Collington, deem that you had to apply Apprendi, it would still be the case that this sentence should be affirmed. And you can reach that through a number of different routes. One would be to say, this was obviously a 50-gram crack conspiracy. That's the only way you got to the life maximum in this case. And 50 grams exceeds 28 grams, which is the next lower penalty range. And so necessarily, this case has to be deemed to be a 5-40 type statutory penalty range. But you had a general verdict, Mr. Cook. You all got a general verdict. You asked for one, and you got a general verdict, and you're stuck with it. Respectfully, Your Honor. If this case were on direct appeal, and you were applying the full panoply of Apprendi and other rights, you would conduct, under cases like Greer and Skilling, a harmlessness analysis and evaluate whether or not the jury would have found more than 28 grams. And here, the jury would have. But you don't raise a harmlessness position in your brief in this case. I do, Your Honor, respectfully. Well, I looked at it before we got on here, and I didn't find it. I was going to ask you if you were obliged to consider harmlessness anyway. You haven't raised it. Well, if you can raise it now. Rule 52 may give you a right to it anyway. I've raised harmlessness. But if you want to fall back on harmlessness, that's fine. That's simply one way. I mean, the lead position, the United States' position is that Collington is wrong. There's no compelled sentence reduction in this case. That was the Solicitor General's position. Hold on a second, Mr. Cook. If what you're telling us is that Collington is wrong, we're kind of stuck with Collington, aren't we, as a panel? You are. I'm just preserving the United States' position for further review and making clear that we don't agree with it. You say the Solicitor General has determined it's wrong? Yes. If you look at the briefing and the argument in Terry, which was after Collington, although Collington isn't specifically named, the United States took the position that every sentence reduction is discretionary, in a defense counsel, and Terry conceded that that was correct. But we don't have to agree with positions taken by the Solicitor General in other cases or other courts. No, that's certainly true, and I'm simply preserving the United States' position. We have to follow our own precedent. I don't disagree with that. Now, you can take Collington to the Supreme Court and try to get it fixed if you all think it's wrong and do that, but we have to follow it, don't we? Yes, Your Honor. And so do you. And so do you have to be. You're bound by, also in this appeal, you're not bound by what the Solicitor General said. You're bound by what we said. I have to adhere to the United States' nationwide position, recognizing that this Court's opinion in Collington is precedential. So what I'm saying is that we disagree. You're trying to talk out of both sides of your mouth, and I don't think you do. I think you know better. Respectfully, Your Honor, I'm not speaking out of both sides of my mouth. I am saying that the United States' position, which is a nationwide position, is that Collington is erroneous. There is no mandatory sentence reduction under 404. But recognizing that this Court has said in Collington that there is, what's on the table here is, frankly, an expansion of Collington. Collington did not tell courts how to go about determining what the applicable statutory maximum is. The defendant's view is absent. Well, if you calculate the guidelines, you always have to determine the statutory maximum, don't you? You do. But then the question becomes, how do you figure out, in a case like this, what the applicable statutory maximum is? Well, you look at the record. You look at the record, and you look at the charge, and you look at the verdict. If you look at the record in this case, it is more than a day after the crime. Mr. Thornton, there was no discussion in Collington, or in Chambers, or Lancaster, or anything. The word of Prendy, and whether it's applicability, was never addressed in any of those three cases. That's true. It just didn't come up. Now, would you object to remanding the case to the district court under a set of instructions that you may consider a Prendy, if you wish, but you're not required to. It's not mandatory. It's discretionary with the district court. And also, in connection with that, you can consider the post-conviction conduct, and the defendant's post-conviction record while incarcerated. Just put it back within the district court, and saying it is all within your discretion as to how to weigh the defendant's rehabilitative conduct, and it's within your discretion as to whether you wish to consider a Prendy, or whether you don't. It's not mandatory. It's discretionary, which is what the whole purpose of the first step act is. Now, is that something to which you would object? I think the court could do that, and that would not be a ruling that would, you know, really, I think, aggrieve the government very much. Having said that, as I understand the defendant's position, and let me add one important qualifier. The qualifier would be that the court would still have discretion to impose the existing 40-year sentence. Now, I'm just, I'm simply asking you. In this case, excuse me, Mr. Cook, maybe we're having some trouble, but what is wrong with saying that the basic purpose of 404C is to give the district court wide reduction, wide discretion with respect to sentencing, and embedded within that discretion is the ability to consider, or not to consider, offending and the ability to weigh the defendant's conduct and rehabilitative efforts while incarcerated. What's wrong with just returning it to the discretion of the district court? I'm not sure that it would sway the district court because the five offenses in this case were committed while the defendant was on parole. I mean, the facts are just not good. And, but the point is, why not just send it back to square one, apprentice discretionary, and you've got to weigh in the balance and the exercise of your discretion with the conduct and rehabilitative efforts while incarcerated. What's wrong with that? That's fine as long as the district court has the ability to impose the 40-year sentence. And I think that's- But how does the district court, how does the district court have the discretion to exceed a statutory maximum in any case, in any event? In this case, the statutory maximum would remain a 40-year at a minimum sentence because- That's your position. That has to be your position that that's what the law is. There's no discretion. There's no discretion in any court to impose a sentence that exceeds a statutory maximum. And if a statutory maximum is 20 years, it can't be exceeded. If it's five years, it can't be exceeded. If it's 10 years, it can't be exceeded. You can only impose a 40-year sentence if it determines as a legal matter that the statutory maximum is 40 years or more. And you have to agree with that. And the government has to agree with that. And the Solicitor General has to agree with that. So, we agree that you don't impose sentences above the statutory maximum. But the position of the other side on appeal is that there's a statutory maximum of 20 years. Right. That's what they- That's incorrect, right? And what's that? I said that's true and that's incorrect. I know, but their position is that. Their position is that. You disagree with it. But you argue even if. I think in your- Did you say you're arguing harmless error? Also. But that business about the statutory maximum is assuming the question, the very question that is before us today. And that is whether Apprendi applies. That's the problem. The question I have and that I've asked Mr. Hazelwood is the tension that I perceive between this case and the United States v. Dillon. And, you know, with all respect to Chambers and Collington, they don't have the authority to undermine or erode the Dillon decision. And there was a Supreme Court in Dillon could easily have applied Booker retroactively and said, no, it's a violation of Sixth Amendment rights. And they said, no, the 3582 sentencing proceeding is dramatically different from the sentencing at the end of a conviction or a guilty plea. The initial sentencing to which every defendant is entitled. And they're saying in these limited proceedings in this and in both Dillon and in our case, they're limited proceedings. They're not plenary. The defendant's appearance is not required. And Collington makes clear, it says, these are not plenary proceedings. So I have a problem with the tension between this case and Dillon. And whether we are impairing significantly the ability of Congress to act targeted sentencing reforms that reach particular classes of offenders without throwing it open to everything. If every targeted sentencing reform is going to become a plenary sentencing, then you've, I think, reduced the ability of Congress to act and reduced the desire of Congress to act. But are those concerns ones that you share? Yes. And one thing I do not want to have lost in this discussion is the way in which the defendant's argument would require this court to go farther in a very important way than Collington. On the defendant's view, they're never post Section 404 is a pre-2010 crack case that falls under 841B1A. On the defendant's view, there's never a 10 to life case because the jury will have never made a finding about 280 grams. And so on his view,  an entire subsection effectively of the statute. And not only is that impossible to square with 404C's language, but even beyond that, it's accepting Apprendi as a rule that must be applied in these cases. It is leading you to completely omit the type of harmlessness analysis that the Supreme Court is not affecting. Even beyond the harmlessness analysis and even beyond the inconsistency with Congress's explicit directions that nothing shall be construed to require a court to reduce any sentence. Isn't there a tension between this case and Dillon if we were to adopt Mr. Hazelwood's view?  I mean, let me also speak directly to Dillon. Dillon stands for the proposition that sentence reductions only do not trigger Fifth and Sixth Amendment problems. You can read Dillon as having been limited somehow to retroactive guideline amendments, but I don't think that's a correct reading of the statute. And logically it makes no sense that a statute that provides only for sentence reductions on final sentences would somehow trigger a Fifth and Sixth Amendment problem without increasing penalties. It's only a sentence reduction, so it can't be a Fifth and Sixth Amendment problem. Courts have sometimes said, well, look, I know it's not constitutionally compelled in the sentence reduction context to apply these Fifth and Sixth Amendment principles, but a court in the district judge's discretion could look at a case and say, you know what, if this case were prosecuted today, it would be a lower penalty, so I'm going to reduce the sentence. And indeed, I would submit that's exactly what happened in this case. The district judge said, you know what, when we sentenced this case, it was treated as 218 grams. 218 grams does not exceed 280 grams, so I'm not going to leave in place the life sentence. I'm going to reduce this to the five to 40 range because 218 grams exceeds the new 28-gram threshold in the Fair Sentencing Act. That's perfectly reasonable and appropriate. Indeed, the United States supported that kind of a reduction in this case down to the five to 40 range. What the defendant wants is even more. He wants this to be deemed a zero to 20 case, and that can't be under the Fifth and Sixth Amendments as Dillon holds, but even as a matter of how a court in evaluating a discretionary reduction should go about things, I think it is appropriate to say, look, this was a final judgment that treated this as a 50-gram case. 50 grams exceeds 280 grams, so it easily meets the five to 40 range. If you look at the facts, it's at least 218-gram case, and if you went to harmlessness analysis, you would say that this is the case where the drug quantity exceeds the 28 grams easily, and also there's also the point that there are multiple counts here and you could stack statutory penalties as this court did that. You have, as a bottom line for your position, you have no objection to a remand to have the district court decide whether or not it wants to be instructed by apprendee, that it can be instructed by apprendee if it wishes, or it need not be instructed by apprendee as it wishes. I mean, even the guidelines have a large element of discretion in them. The fact that the guideline range doesn't tie the district court, the district court can downplay a part, the district court can upperly vary, if it doesn't, and if even the, if the guidelines themselves compare district court, how can apprendee interfere with district court's discretion because these 404C proceedings were intended by Congress to provide the widest range of discretion at all. Maybe the district court wants to calculate the statutory maximum and everything, but that's only one step. The second step is whether an apprendee applies once that calculation is made, and that's got to be within the district court's discretion. And what we're trying to do, that's counter to the guidelines and counter to section 404C, is take a discretionary section that Congress passed, a statutory section, and convert it into something mandatory, and that just seems to be needed at the current time with congressional intent. Why don't it care? Do you see what I'm saying? Yes, Your Honor, and I agree with that. We don't oppose a remand provided that the remand leaves the district court the discretion to leave in place the 40-year sentence. Mr. Koch, can I ask, so let me ask about that because, you know, there's a lot to commend the concerns that Judge Wilkinson has raised, but, you know, I keep going back to Lancaster, and it would seem odd that we would suggest in this case that the district court would have discretion whether or not to apply apprendee when we said in Lancaster that the court had no discretion in applying a change in the law with respect to non-retroactive guideline facts. So, I mean, how do you square that case other than to say that you disagree with it? I think maybe that's the fundamental answer that you might have, but aren't we bound by, even though, and it's true, Lancaster said nothing about apprendee, but it would seem odd that we would say in this case that a court has discretion whether or not to consider apprendee having said in Lancaster that a court has no discretion whether or not to consider non-retroactive guideline changes in the law when deciding whether or not to grant First Step Act relief. Right, as a threshold now, we do disagree with that line of precedent, but taking it as given, I think you can make a couple of points about it. The first would be that apprendee is talking about criminal liability here, and that puts it in a different category. Everything we're talking about here under 3582C1B and 404 is about sentence reductions, not changes in criminal liability. The second point I would make is, even if you treat it as something a district judge has to apply, you still should be doing some sort of review of the record about what the evidence would support in this case so that you don't end up in a situation where you've said there are literally no B1A offenses for crack anymore under Section 404, which... So that's the harmlessness analysis that you're talking about? Right. If you don't do that, then I think you've taken this to a very extreme position. And I see my time is up. I don't want to grow out my wealth. I've got a question. Go ahead and finish your sentence. But I think Judge King had a question. Oh, I didn't want to interrupt you, Mr. Prook. I thought you were still speaking. I'm sorry. Is it your position that all the counts on which this defendant was convicted for the court in this proceeding, or does this relate to count one, the sentence on count one? Only count one is a covered offense. I'm not sure I am following what Your Honor's question is. Could you... Well, you talk about the harmlessness. You said earlier in response to one of the other judges that something about your harmlessness argument took into account the other offenses and the sentences on the other counts. Right. And potential for stacking. And that gives rise to the question, you're taking the position that these other counts are before this court. Are you? You're not. So there's two ways of looking at that. Way number one is to say that under the as if language in 404B, if you were to take this case and imagine that the Fair Sentencing Act applied at the time of sentencing, then under 5G1.2D, the guideline range would be life still, and the court would stack counts to get to the guideline range. And so this defendant would end up with at least a 40-year sentence, in fact, more. So there's that way of looking at 404B. Another way of looking at this, which this court has not said in any case, that I'm aware of, is that you can only make a change to the sentence on a covered offense. Some other courts have said that this court has not. That issue has not been briefed in this case. It doesn't seem like an outcome this court is likely to endorse. But the court could say that only sentences on covered offenses can be changed. Is it your opinion? Mr. Kirk, let me... Excuse me, Judge King. I interrupted you. Go ahead. No, you go ahead. You go ahead, Judge Wilkins. I was just saying you can have a mandatory feature to these proceedings in the sense that it's mandatory to recalculate a guideline's range, or it's mandatory to find out what the statutory maximum would be. But the fact that it is mandatory to consult the record as to what the sentencing statutory maximum may be, and it may be mandatory to take into account as to whether it was a judicial finding or whether it was a jury finding. But the fact that recalculating the guidelines range and finding what the statutory maximum is, that's step one. But that doesn't get you all the way home because even after you recalculated the guidelines and even after you discovered what the statutory maximum for this town or that town is, you still retain the discretion as to whether to impose a sentence, a new sentence within the guidelines range, or whether to have a friendly apply all. And if the district court were to say, yes, this is a statutory maximum, I realize that the judge has imposed it. But looking at the whole picture here, these were horrendous offenses. They were committed while on parole. I'm just not going to reduce the sentence. Now, the district court in this case did. But the question I'm asking you is finding statutory maximum and finding guideline ranges doesn't render 404C inapplicable. It doesn't strip the district court of all, as friendly doesn't strip the district court of all discretion in this context any more than finding the guidelines strip the district court's discretion to depart upward or downward or whatever. You've got to read that language seriously. At the end of the day, when the sun sets, the district court retains discretion over whether to order a reduction. And I don't see any way around it. We agree with that, Your Honor. So you agree, the problem. The government's position is that the district court can exceed, impose a sentence or ratify a sentence that exceeds the statutory maximum. No, the government's position is there's a final judgment of conviction with a valid sentence here and Congress enacted a mechanism for discretionary sentence reductions. So if on the review, pursuant to Collington, the statutory maximum is determined to be 20 years, for example, that can be exceeded. I think that if you were to look at what the D.C. Circuit did in White or what the Sixth Circuit did in Maxwell or what the Eleventh Circuit has said, you would find that in all of those cases, those courts aren't saying that sentence reductions are mandatory. And let me ask you, I wanted to get a question about those other counts. Am I wrong that the sentences on the other counts, as to this defendant, have been served completely? He has served more than 20 years, but under this court's opinion and Smith, there's a unitary sentence. Answer that first, yes or no. As he served the sentences, they were imposed in a concurrent manner, correct? Right, but it's a unitary sentence, which this court discussed that principle in Smith. But the sentences on the other counts on which he was convicted have been served. He served 23 already, right? Probably. But it's a unitary sentence. And what this court said in Smith is that you can reconfigure components of a unitary sentence. The other point is, unlike in Smith, you're talking about, once again, a discretionary sentence reduction under 3582C1B. And I don't think that the kinds of double jeopardy concerns at issue in Smith really come up in a context where all you were talking about is a discretionary sentence reduction. All right, let's conclude unless there are further questions. Judge Diaz, do you have some further questions of Mr. Cook? I don't, thank you. Judge King, do you have any further questions of Mr. Cook? I do not. All right, Mr. Hazelwood, you have some time in rebuttal and we'd like to hear from you. Thank you, Judge Wilkinson. If I could begin with the stacking harmless error point that the court was just discussing. Judge King, as you recognized, the only harmless error argument the government made in its brief was this idea that, in 2019, imposing a new sentence on Mr. Slate, the district court could have reopened his fully served prison terms on other counts, which Mr. Cook said a moment ago are not covered by the First Step Act, and impose an increased sentence on those counts by making them become consecutive rather than concurrent sentences. That flies in the face of the way that the government has tried to limit the scope of the First Step Act in every other case this court has heard and in this case. So even putting the double jeopardy concerns aside, which are real for the reasons we briefed, there is no conception of the First Step Act that would allow a district court to reach out, reopen fully served prison terms, and increase the sentences on those terms. To the extent that Mr. Cook is nodding at another possible harmless error argument, which I take from his discussion of the 50 grams and the indictment and things of that nature, we cited the court to a case in our letter. Mr. Cook submitted a letter last week that seemed to be hinting at other possible harmless error arguments that hadn't been briefed. When you're talking, Mr. Hazelwood, about sentencing increases, it brings up another concern I have, and that is that the Apprendi, the First Step Act and 3582C2 were both enactments that were designed to stimulate sentencing reductions in a worthy case. We know that. And Apprendi has a different focus, and in fact, it goes in the opposite direction because Apprendi is not concerned with sentencing reductions necessarily. It is concerned with avoiding unwarranted sentencing enhancements based on judicial findings. But if you look at which way the arrows point, isn't there a difference between statutory sections, which are targeted sentencing reductions, and Apprendi, which is focused on avoiding sentencing increases and enhancements? Those are not differences of degree, are they? They're differences in time. No, Your Honor. I agree that there are those two categories. I disagree that First Step Act proceedings fall into the sentence reduction category. For the simple reason that, as this Court said in Wersing, as this Court said in Chambers, when a district court, as here, exercises its discretion, it is imposing a new sentence. And that is something different than a mechanical reduction under 3582C2 and under Dill. And Judge Wilkinson, I recognize we may disagree on that, but I think that's an important point that this Court has addressed, that a First Step Act proceeding is the imposition of a new sentence. And so when a district court sits down— this is not a plenary sentencing proceeding. I mean, that language is in there. And I don't know all the different ways it's not a plenary or sentencing proceeding, but one of the crucial ways is the presence of the defendant, as I understand it, is not required. And so there's got to be a big difference between the sentence, which one is entitled to, really, as a matter of constitutional right, on the heel of that initial sentence, on the heels of a conviction or on the heels of a guilty plea, on the one hand, and a sentence which is a matter of congressional grace and lenity, as the Supreme Court pointed out was the case in Dillon. The long-range consequences of this are going to be deleterious from the standpoint of criminal defendants because people in Congress are going to say, look, when we try to pass targeted sentencing reductions, what's happened is that the courts have transformed them into plenary sentencings and a whole new sentencing. And district judges are going to be clobbered by that. They already are being clobbered by it. But, you know, sometimes you need to be just a bit careful about what you wish for. Your Honor, a few points in response. The first on the plenary resentencing point, Mr. Slate is not advocating for a plenary resentencing for a number of reasons. I see that my time is up, but if I may finish. No, we gave Mr. Cook some extra time. You deserve some too. Thank you, Your Honor. I've got another question, Judge Wilkinson. Yeah, Judge King has a question for you, Mr. Hazelwood. Yeah, Mr. Hazelwood, you raised, you all raised a question about the fact you didn't have counsel in the earlier proceedings. And of course, when he came up here on appeal, we not only gave him counsel, we appointed one of the finest law firms in the world. And we have you here today. If this thing were to go back to the district court, are you telling us we'll stick with him? Your Honor, as the court knows, we were appointed under the Criminal Justice Act, and we will absolutely fulfill the terms of that appointment for Mr. Slate. Does that mean you're going to stick with him? Your Honor, I'm not in a position to- You just dodged my question. I apologize, Your Honor, in my authority- I thought lawyers- I've practiced law for a little while myself. And I thought lawyers get a case, and unless they're conflicted out or something, they, particularly the criminal case, they stick with their client. Yes, Your Honor. I'm not familiar with the specific terms of the scope of the CJA appointment. I don't want to commit to something that we haven't, that might be beyond the scope of an engagement letter at this particular point in time. I apologize, but my answer is- I'm not satisfied with your answer. If that's your answer, I'll settle with it. If I may, Judge Wilkinson, we were talking about a plenary resentencing. I'd like to answer your question there. No, please proceed. Sure, I'd be happy to have you do that. Mr. Slate is not advocating for a plenary resentencing for a number of reasons. As Your Honor stated, Mr. Slate is not suggesting he has a right to presence or allocution. And I think, again, I would encourage the Court to look at Collington and how Collington discussed the spectrum between mechanical sentence reduction proceedings, which this is not, as this Court has held, and initial plenary resentencing, which, again, this is not. The first- Well, you're inching toward plenary resentencing, you know, case after case after case. These proceedings are becoming more and more and more elaborate. And you talk about it not being a mechanical exercise, about it being a discretionary exercise. And yet you're meeting yourself going and coming because it's that very discretionary exercise that you're leaning upon now that, with the other hand, you're trying to limit and turn it into a mandatory application of apprendee. You're trying to say, well, this is different from 3582C, too, because this is a discretionary exercise. And then in the same argument, you're saying, no, it's actually mandatory that the apprendee applies and you don't have any discretion at all. And, you know, I don't understand that. It just seems to me you're meeting yourself going and coming with that. I think I may have misspoken. We submit that First Step Act proceedings are not equivalent to Dillon or 3582C, too, not because of any discretion, but because Congress, as this court interpreted in Worsing and Chambers, specifically chose to direct district courts to impose a new sentence, which carries with it much more than a mechanical reduction. So that's our position as to why this is different. But imposing a new sentence is different from imposing a reduced sentence. And that is what Congress did not authorize. It did not authorize it. It did not require it. Well, I think as this court put it in Collington, a First Step Act proceeding can result in the imposition of a new reduced sentence. And so imposing a sentence is something more than a sentence reduction. It's not a plenary re-sentencing. The defendant, as I said, and as Your Honor said, doesn't have a right to presence or allocution. Mr. Slate is not suggesting that he could reopen any factual disputes that were litigated at the initial sentencing. What he is saying is that when the district court sat down in 2019, exercised its discretion to impose a reduced sentence, it had to apply the statutory sentencing ranges and apprendee, or as Judge King has mentioned, quipsie and rhymes, tell the district court how to do that. And so I would disagree with Your Honor Mr. Hazelwood, can I follow? So you've got the order now, as you said, when the court decided to exercise its discretion, it then had to apply apprendee. But I think, as I understand your position, the court is obligated to apply apprendee. And so in that sense, it sort of strips the court of the discretion that Judge Wilkinson is rightly concerned about, that the statute ultimately allows the district courts, because the, you know, the end of the limitation section of the statute says that nothing in this section shall be construed to require a court to reduce any sentence. But that doesn't seem to be, I mean, if we're applying the reach of our cases and we're here and we're obligated to do that, it seems as Judge Wilkinson has indicated that there is no longer any discretion, at least when it comes to an application of apprendee. Well, if I could answer that question in two ways. The first is, I think that the latter, as your Honor would say, is dictated by Cullen. District courts have discretion. What they don't have is discretion to impose a sentence outside the statutory sentence range. Which is to say they don't have discretion. When application of apprendee or application of the Fair Sentencing Act, statutory would mean that the... Well, where do we get the authority for these sort of carve-outs? Well, I think that's what this court... Where do we get the authority? Why, you know, why isn't the guidelines a carve-out? I mean, I can think of a number of carve-outs to the district court's discretion and it bothers me that we're beginning now with carve-outs to the district court's discretion and I don't see the statutory basis for any of that. Well, I think what this court said in Collington is there is discretion, but it is an abuse of discretion to refuse to impose a written sentence when that is effectively a decision to maintain a sentence above the applicable statutories. We're talking about a very specific statute that this isn't just a normal abuse of discretion business. This is a discretion which is backed up by the fact that you cannot require a court to reduce any sentence pursuant to this section and that's what you're doing. Well, I think as this court held in Collington, the First Step Act made the Fair Sentencing Act statutory sentencing ranges retroactive. So it is an abuse of discretion to refuse to apply those statutory sentencing ranges and maintain a sentence that would be unlawful. You're still bumping up against that statute and against Dillon and there's too much of that going on here. And I think we're wading into trouble. I've been very concerned about it. At any rate, I always like to give you the last word. So please, you close. Thank you, Your Honor. If I may, in light of your question, Judge Diaz, and your concerns, Judge Bolton, there is a narrower way that the court could address Mr. Slate's case specifically, which is, as I've said here, there's no dispute that the district court did exercise discretion, did impose a reduced sentence. So I would encourage the court to look at Collington, specifically the passage on page 357. Again, Collington was a case in which district court refused to impose any reduced sentence. And we've had our debate about the whole big thing. What the panel said in Collington, briefly to stop it, it would be an error for a district court to choose to impose a reduced sentence and in so doing, impose a sentence, I believe they said, of 20 years and one day, which would exceed the statutory sentencing range. I think the panel was right that that was easier. District court has already exercised discretion.  Thank you, Mr. Hazelwood. My apologies, Your Honor. Mr. Hassett, thank you very much. I'm going to ask Judge King and Judge Diaz if they have any more questions for you. And if they do, we'll entertain those. But if they don't, we will go into our next case. Judge King, do you have any further questions? I have none. Judge Diaz? I do not. Thank you. All right. I would like to thank you both. Mr. Hazelwood, we very much appreciate your argument and I understand that you were court appointed. Well, that makes us especially appreciative of the fine argument you've given. And Mr. Cook, I want to thank you. You always give a good, well-informed argument before this court. We really appreciate yours, too. So we thank you. We thank you both.  Thank you, Your Honor.
judges: J. Harvie Wilkinson III, Robert B. King, Albert Diaz